UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,                          CR. NO. 24-20024

v.                                  JUDGE: LINDA PARKER

GEORGE MANDARAKAS,

Defendant.

_____/

## DEFENDANT'S MOTION FOR

## REVOCATION OF DETENTION ORDER [ECF No.: 12]

Defendant George Mandarakas, through his attorney, Barton W. Morris, Jr., and pursuant to 18 USC 3145, moves this Honorable Court to revoke the order of detention imposed by Magistrate Judge Altman on January 10, 2024. Mr. Mandarakas also requests that pre-trial release be granted by this Honorable Court. Mr. Mandarakas submits the following brief in support of his motion.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                    Plaintiff,                CR. NO. 24-20024

    v.                                     JUDGE: LINDA PARKER

GEORGE MANDARAKAS,

                    Defendant.

_____/

## DEFENDANT'S BRIEF IN SUPPORT OF MOTION FOR

## REVOCATION OF DETENTION ORDER

A criminal complaint was filed on December 28, 2023, charging the Defendant with Attempted Kidnapping contrary to 18 USC 1201. On December 29, 2023, an Order for Temporary Detention was entered, and a Hearing was set for January 3, 2024 [ECF No.: 7]. On that date, Defendant requested and was granted a continuance of the detention hearing due to newly appointed counsel.

On January 10, 2024, a detention hearing was held before Magistrate Judge Altman who entered an order of detention pending trial [ECF No.: 12]. Defendant now moves this court to revoke that detention order and grant pre-trial release.

**Applicable Law**

Under the Bail Reform Act, a person brought before the court on their initial appearance shall be released on their own personal recognizance or with a combination of conditions that ensures the safety of any member of the public and reasonably assures their appearance in court. 18 USC 3142(a).

In cases that involve a "crime of violence", upon a motion from the Government, a detention hearing must be held to determine whether any conditions or combination of conditions will reasonably assure his appearance in court and the safety of any person or the community. 18 USC 3142(f).

> The rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the hearing. The facts the judicial officer uses to support a finding pursuant to subsection (e) that no condition or combination of conditions will reasonably assure the safety of any other person and the community shall be supported by clear and convincing evidence. The person may be detained pending completion of the hearing. The hearing may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community. 18 USC 3142.

"The default position of the law ... is that a defendant should be released pending trial." *United States v Stone*, 608 F3d 939, 945 (6th Cir. 2010).

In determining whether there exists a combination of conditions that would ensure the person's appearance in court and protection of the community, the judicial offer must consider the following factors:

1.  The nature and circumstances of the offense charged.

2.  The weight of the evidence against the person.

3.  The history and characteristics of the person including their character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history related to drugs or alcohol, criminal history, and record of appearance in court proceedings.

4.  Whether the person was on probation or parole at the time of the alleged offense.

5.  The nature and seriousness of the danger to any person or the community that would be posed by the person's release.

    18 USC 3142(g).

If after the hearing, in the case the court orders detention, an order must be issued setting forth, among other things, the written findings of fact and statement of reasons for the detention. 18 USC 3142(i).

## **Neither Attempt Kidnapping nor Stalking is a Crime of Violence**

A crime of violence is defined as an offense that:

1. Has as an element of the offense the use, or attempted use, or physical force against another person, or

2. Any other felony offense that, by its nature, that involves a substantial risk that physical force against a person may be used while committing the offense. 18 USC 3156(4).

On January 11, 2024, the Government filed a Grand Jury Indictment charging the Defendant with attempt kidnapping pursuant to 18 USC 1201(a) and (d) and stalking pursuant to 18 USC 2261A.

The elements of attempt kidnapping are:

1. The defendant was indicted for the crime of kidnaping,

2. The defendant did some overt act which was a substantial step towards committing the crime of kidnaping.

The elements of stalking are, a person:

1. Travels in interstate commerce,

2. With the intent to harass, kill, intimidate, or place under surveillance another person,

3. Places that person is reasonable fear of death, or serious bodily injury.

On their face, neither offense has an element that requires the use or attempted use of physical force against another person therefore, neither is a crime of violence.

The United States Supreme Court addressed this issue in *United States v Taylor*, 142 S. Ct. 2015 at 2020 (2022). In *Taylor,* the definition of a "crime of violence" pursuant to the application of being in possession of a firearm during a crime of violence offense pursuant to 18 USC 924(c)(1)(A). *Taylor* interpreted the attempt commission of a Hobbs Act robbery offense and the court reasoned that if an attempted case can be accomplished without any violence, it does not qualify.

In considering the case at bar, kidnaping is accomplished when someone:

> unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person. 18 USC 1201(a)(1)

It is not necessary to engage in an act of physical or violent force because "inveigling or decoying" can be accomplished without any threat of physical force. See *United States v Bustos*, No. 1:08-CR-297-LJO-3 (E.D. Cal. Nov. 17, 2016) (holding that kidnapping under 18 USC 1201(a)(1) could not serve as a predicate offense for 18 USC 924(c)(1)(A) as it did not categorically qualify as a crime of violence under the force clause of 18 USC 924(c)(3) because the first element could be satisfied without the use of physical, violent force as, while seizing, confining, or carrying a victim away could implicate the use of violent force, inveigling or

decoying did not; and the second element, which was the holding element, could be satisfied without any threat of physical force.)

Therefore, the Defendant is entitled to be released as a matter of law. 18 USC 3142(a).

## Review of Detention Order

A person ordered detained by a magistrate after a detention hearing may obtain a review of said order by filing a motion for revocation to the court having jurisdiction 18 USC 3145(c). The motion shall be determined promptly. *Id.* The reviewing court shall apply a de novo standard. *People v Stone* 608 F3d 939, 945 (6th Cir. 2010); *United States v Hazime*, 762 F2d 34, 37 (6th Cir. 1985).

A defendant may be detained pending trial only if the Court "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community[.]" 18 USC 3142(e). "A judicial officer's finding of dangerousness must be 'supported by clear and convincing evidence.'" *United States v Stone*, 608 F3d 939, 945 (6th Cir. 2010) (citing 18 USC 3142(f)(2)(B)).

"Regardless of whether the presumption applies, the government's ultimate burden is to prove that no conditions of release can assure the defendant will appear and to assure the safety of the community." *Id.* at 946. To determine whether no condition or combination of conditions exists that will reasonably assure Defendant's

appearance, the Court must consider the following factors from 18 USC 3142(g): 1) the nature and circumstances of the offenses charged; 2) the weight of the evidence against Defendant; 3) his history and characteristics; and 4) the nature and seriousness of the danger to any person the community that would be posed by Defendant's release. Moreover, only a majority of the factors need to be met. *See United States v Oliver*, No. 16-40, 2016 U.S. Dist. (W.D. Pa. May 3, 2016) (alteration added) (holding that the Government "met its burden to demonstrate that pretrial detention is appropriate" after meeting a "majority of the 3142(g) factors.")

## **Argument**

Despite the fact that charges in the indictment are not ones of violence, the Government still has not met its burden and Defendant must be released. A Detention Hearing was held on January 10, 2024, before Magistrate Judge Kimberly Altman. This is not a presumption of detainment case. The Government proceeded by proffer reciting only the facts contained in the criminal complaint. Pre-trial services reported that there did exist conditions that would reasonably ensure the defendant's appearance in court.

The issue that Magistrate Judge Altman seemed to find problematic was regarding the Defendant's dangerousness. Relying only upon the Government's side of the case from nothing more than a summary proffer, she found the following:

Regarding the nature and circumstances of the case she stated that she only considered the circumstances as offered in the government's proffer and that the maximum penalty of the offense is 20 years, she found weighs in favor of detention. (hearing transcript page 32, lines 5-20). On multiple occasions, the court called the facts "chilling" while also acknowledging that the "defendant's plan was far-fetched." (T, page 33 line 11). In fact, what the court did not acknowledge, or perhaps did not recognize, is that it was also nearly impossible. To travel to a different county, among other things, this "plan" seemingly required a boat, and all passengers must have passports. It was proffered that Defendant does not own a boat, has never owned a boat, and does not know how to sail. The government did not put forth that the Defendant has a license to operate a boat, which he does not. The Government, in response said, according to the victim (which was not in the criminal complaint), the Defendant learned how to sail "during the last few months". T, page 27). With all due respect, this comment seems absurd. There is no context for this statement, nor is it supported anywhere in the discovery provided to the defendant. This hearing took place in January of 2024 and the "last few months" would place that time frame squarely outside of boating season in both New Jersey and Michigan. Plus, this court can take judicial notice that someone cannot learn to sail or operate a boat within a few months. The magistrate's finding that Defendant's "plan" alone was enough

evidence to predict defendant's post indictment potential behavior is dangerous was an abuse of discretion (even though that is not the standard this court must consider).

The magistrate considered the weight of the evidence as to risk of flight and danger to the community. (T, page 33, lines 14-18). In her determination of a risk of nonappearance, she only referenced the portion of the government's proffer that there existed notes allegedly made by the Defendant that he had thought about leaving the country. She stated "Maybe you're (the defendant) not going to leave the county, but you're thinking about ways to disappear. So, I think that's potent evidence as to your risk of nonappearance". (T, page 34, lines 1-3). That is all she considered. She did not consider that Defendant has no record of non-appearance as he has *never been convicted with a criminal offense*. Regarding his pre-charge conduct, he has every right to think about, or leave the country. In fact, within the prior few weeks, he had left the county and went to Canada, and he returned. Should that then form a legitimate basis to argue that he is a risk of nonappearance? Of course not. He is now indicted of two federal criminal offenses and when concerning a person whom his entire life has been a law-abiding citizen, he should be afforded with the presumption that he would follow the orders of the court. Additionally, as mentioned earlier, he does not own a boat and has never sailed.

The magistrate also found the weight of the evidence to the level of dangerousness to the public to be weighty but does not state to what degree

summarily stating "the level of detail and planning, the statements, the stalking of this victim when she found out that you were not who you had purported to be for four years, and your responses, I think, clearly show a level of dangerousness". (T, page 34, lines 4-8). The Defendant had dated and known the victim for at least four and a half years and there has never been an allegation that he was a dangerous person. There exist no allegations of harm, assault, abuse, or dangerousness. The proffer mentioned two separate times that the Defendant had contact with the victim in November of 2023. The first time, the victim agreed to meet with the Defendant. The second meeting was at a local bar while the victim was with friends. He did not attempt to approach her when she was alone. He was asked to leave by the victim, and he did. There were not any facts from those contacts that indicated she was in danger. He did not forcibly do anything to her. Appearing where the victim is may be evidence of him trying to talk to her. Nothing more was alleged. She has never expressed that she feared him or anything he may do to her. He had contact with her a total of two times in the three months since they broke up. One encounter was in public and the other time, she agreed to meet with him. Both times, nothing unlawful was alleged, nor was there any unusual behavior. A proposal for marriage is not unusual for a couple who have been dating for four and a half years and were once in love with each other.

Despite the government's contention that Defendant had lied about his family circumstances, you cannot date someone for four and a half years without getting to know them. They had previously travelled to each other's family homes and out of the country together. The victim knows the defendant intimately and if he had *any* tendency to be violent or dangerous, she would likely know, and certainly would have reported it. Similarly, Defendant's wife also never reported any tendency to be violent or dangerous (see Exhibit 1 – email from Defendant's wife). And despite what has happened between them, Defendant's wife fully supports him. She has also stated that the Defendant is not a dangerous person. He has never manifested any violent or assaultive behavior.

The magistrate has demonstrated a bias towards the prosecution in using the proffer as justification, but not considering information provided by the defense. Despite that defendant's car and belongings being found in a different location and knowing that Defendant has just moved his belongings from a home that his family has lived in for most of his lifetime, the magistrate relies upon the items that the government cherry picked from the vehicle. For instance, the ammunition discovered did not fit the firearm that was found.

A judge's finding of dangerousness must be supported by "clear and convincing evidence" 18 USC 3142(f)(2)(B). The proffers made by the government are overstated, not a full recitation of the facts and still do not amount to the evidence

necessary to demonstrate that the Defendant is a danger to the community or another person.

## **Legal Argument**

### A. Nature and Circumstances

The nature and circumstances of the offense charged weigh in favor of release. An attempt kidnapping requires that the government prove, not only that the defendant intended to commit the crime, but they must also prove that the defendant committed an overt act that constitutes a substantial step toward the commission of the crime. *United States v Wesley*, 417 F3d 612 (6th Cir. 2005). The court *Alebbini* has elaborated generally on the elements of attempt. "A substantial step must be something more than mere preparation." *United States v Alebbini*, 979 F3d 537, 546 (6th Cir. 2020), quoting *United States v Bailey*, 228 F3d 637, 640 (6th Cir. 2000). "Evidence is sufficient to sustain a conviction for criminal attempt, if it shows that the defendant's conduct goes beyond preliminary activities and a fragment of the crime was essentially in progress." *Alebbini* at 546-547, quoting *United States v Price*, 134 F3d 340, 351 (6th Cir. 1998).

An overt act constituting a substantial step was not proffered and simply does not exist. It is the government's theory that Defendant intended to take the victim out of the country, but they have not pointed out any means to effectuate that plan.

Defendant should not have to provide its defense in this motion, but he did not buy a boat, arrange for the victim to travel without a passport. Perhaps he intended to convince the victim to come with him voluntarily. That is just as plausible as the alternative. They were together for four years, not four months. They were in love with each other. It is reasonable to conclude that he believed he could talk her into leaving with him. That is more plausible because forcing her to leave with him is not in his character and is nearly impossible to leave the county without a passport. That is, of course, unless he had a boat or a plane. He had neither a license, nor knowledge nor capacity to operate either. The government assertion that he "learned how to navigate a boat within the last few months" is absurd. So far, we have heard nothing that remotely evidences a substantial, overt act towards effectuating an intent to kidnap anyone.

B. <u>Weight of the Evidence</u>

Weight of the evidence reflecting dangerousness, not guilt. *United States v Stone* 608 F3d 939 (6th Cir 2010). The government's proffer did not elicit any evidence of dangerousness. There were no allegations of domestic violence, or a reputation of forcefulness. There were not any allegations that he even has a temper. The Defendant is a docile and peaceful man. The undersigned is dismayed at the lack of evidence that was proffered yet was still enough to decide in favor of detention.

Further, there exist conditions that can ensure the defendant is not a danger to the community or the victim. First, there is no evidence he has ever been a danger to the community. He has no history of assault or substance abuse. The only issue here is the potential danger to the victim. If he is released, we propose he will live in Florida with his mother. Presumably he will be thousands of miles away from the victim. He would only be in the same state as her during his court appearances. He, of course, would be subject to a no contact order and even a GPS tether could be ordered although the undersigned fails to see how that would even be necessary.

C. <u>History and Characteristics</u>

George Mandarakas is currently 36 years old and grew up in New Jersey graduating high school with honors in 2005. The Defendant is a highly intelligent person and graduated from the University of Notre Dame with two degrees. In 2009 he earned a Bachelor of Science (BS in chemical engineering) and in 2014 a Master of Business Administration (MBA). He is also currently a licensed real estate agent in the state of Florida. He has been professionally employed most of his adult life. Upon graduation he worked for BASF in California in 2009 and moved back to New Jersey (still working for BASF) in 2010. He continued to work for BASF in different roles through 2016 working in marketing and innovations. In that time, he has accepted three invitations to the White House to meet officials regarding his work on nano technologies. From 2016 through 2018 he worked at the Evonic which is a

$15-billion-dollar chemical engineering company that operates worldwide in more than 100 countries and more than 33,000 employees.[1] In 2018 he worked at the University of Notre Dame in their engineering department. From 2022 to January of 2024, he worked at Indredion Corporation as the Head of Innovation headquartered in Bridgewater New Jersey.

Mr. Mandarakas was married in 2017 to his wife, Stephanie, whom he has been with since 2012. They have a three-year-old daughter, Kingsley. He has no criminal arrest or conviction history. He has never been alleged to have an assaultive nature by either the victim in this case, nor his wife. In fact, his wife has characterized him as a very loving and docile man with whom she has no fear for her safety.

D. Danger to the Community

The magistrate has identified this to be the most concerning circumstance. A danger to the community has not been argued, but rather whether the Defendant poses a danger to the victim. The question is whether the government has, or can, prove clearly and convincingly predict the Defendant's dangerousness to the victim such that no condition or combination of conditions can be ordered that would ensure the safety of the victim. This is not a presumption case. Nor has a crime of violence been charged. (see argument above). Defendant has two college degrees, has never been charged with a criminal offense, has no history of any allegations of violence

---

[1] https://corporate.evonik.com/en/company

or assault, and has a stable place to reside **in a different state in which the victim**

**resides**, with his mother who will vouch for and assist with his compliance. What

has the government shown so far to satisfy their burden? A "far-fetched" scheme

suggested by a third party proffered because of several levels of hearsay (BV to the

victim to the FBI) supported by evidence they cherry picked out of a motor vehicle

what was not even on the scene of the arrest? Why then would a GPS tether not be

satisfactory along with his mother being a guardian? He has never demonstrated

anything that would suggest that he would not strictly follow the orders of the court.

This Court can take his passport, order him not to leave the state unless he comes to

court. He can be ordered not to possess a firearm or engage in any assaultive conduct.

He has retained counsel who will also assist to ensure his appearance. There has been

no testimony to support that, if he is released, he will continue to pursue the victim

or have contact with her. Further, according to information and belief, there exist no

recorded phone calls while the defendant has been in custody that illustrate that he

would do anything other than what is ordered by the court.

He does not have any gang affiliations. The only firearm he possessed was not

accompanied by ammunition that fit the gun. There is no evidence or allegation that

he regularly carries or has even used a firearm. And he was not carrying a firearm at

the time he was arrested which, the government suggests, was the time he may have

tried to attempt a kidnapping.

Respectfully submitted,

THE LAW OFFICES OF BARTON MORRIS

By: */s/ Barton W. Morris, Jr.*
Barton W. Morris, Jr. (P54701)
Counsel for Defendant
801 W. Big Beaver Rd, Ste 600
Troy, Michigan 48084
(248) 541-2600
Email: barton@bartonmorris.com

Dated: April 10, 2024

## CERTIFICATE OF SERVICE

I hereby certify that on April 10, 2024, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to all parties of record.

LAW OFFICE OF BARTON W. MORRIS, JR.

By:  /s/ Barton W. Morris, Jr.
     Barton W. Morris, Jr. (P54701)
     Counsel for Defendant
     801 W. Big Beaver Rd, Ste 600
     Troy, Michigan 48084
     (248) 541-2600
     Email: barton@bartonmorris.com

Dated: April 10, 2024

# EXHIBIT 1

**Isabella Ubaydi**

**From:** Barton Morris
**Sent:** Monday, April 8, 2024 10:26 PM
**To:** Isabella Ubaydi
**Subject:** Fwd: Statement for George Mandarakas

Begin forwarded message:

> **From:** Stephanie Bardell <stephbardell1@gmail.com>
> **Date:** April 8, 2024 at 8:32:22 PM EDT
> **To:** Barton Morris <barton@bartonmorris.com>
> **Subject: Re: Statement for George Mandarakas**
>
> I am not 100% sure what you need.
>
> He's never show signs of violence or being dangerous so hopefully below is good, let me know if I need /can elaborate. Essentially why would I be married to someone I thought was dangerous or violent... I just wouldn't. I'm fiercy independent and wouldn't have stayed. This whole situation is so unimaginable.
>
> George and I have known each other since January 2012, when we first started dating, during that time George has never been violent towards me or our daughter.
>
> We had a regular marriage with regular arguments, some loud and heated, however none of which escalated in violence towards me or none where I thought he could or would hurt me. I am not scared of him on that front.
>
> Before these events we were planning our future together, something which I would never do with someone I thought was a "dangerous". We had dreams of another child, properties in Greece, and more!
>
> He comes from a respected family, grew up in lovely neighborhood, went to good schools, has nice friends, vacationed in nice places, and has worked hard his whole life and has never been in "trouble". He hasn't shown evidence of being a danger to society if anything he has always had the mentally to help those less fortunate.
>
> He had an affair and that isn't nice to go through / be on the receiving end, but that doesn't mean he is violent or scary, men and women are cheating on their partners all over the world, thats not a crime.
>
> With all this in mind I am and will still support him during this time, we currently have a very amicable relationship and still speak regulary. He is the father to our child and I trust him

to be a good responsible dad to her, just as he always has been. He is a fun and caring parent, and therefore deserves to see his young daughter in person. She loves and misses him greatly.

Sent from my iPhone

> On Apr 8, 2024, at 6:14 PM, Barton Morris <barton@bartonmorris.com> wrote:
>
> Stephanie,
>
> Because you know him well, can you respond to this message with your opinion about George Mandarakas' propensity for violence or dangerousness? I will include your response in the motion I am about to file for his release. Dangerousness is the main issue.
>
> Barton Morris