UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                 Plaintiff,             Case No. 24-20024

vs.                           Hon. Linda V. Parker

GEORGE MANDARAKAS,

                 Defendant.

_____

## MOTION FOR PRETRIAL RELEASE

**Pursuant to Local Rule 7.1, undersigned standby counsel has contacted the government regarding concurrence in the relief requested.  The government does not concur.**

NOW COMES Defendant, George Mandarakas, hereby requesting that this Honorable Court review his Motion and sign the attached Order GRANTING him pre-trial release, or in the alternative schedule a Hearing.

## I. INTRODUCTION

A Court that has issued a Detention Order may reopen a Detention Hearing at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that a material bearing on the issue of whether there are conditions of release that will reasonably assure the

1

appearance of the Defendant and safety of any other person. The new information must increase the likelihood that Defendant will appear at trial and show that Defendant is less likely to pose a danger. *United States v Hamilton*, ED MI 2016.

Under 3142(i) of the Bail Reform Act, a Court may also permit the temporary release of a Defendant for "preparation of the person's defense or for another compelling reason".

At the time of Defendant's initial Detention Hearing on January 10, 2024, Defendant was procedurally uninformed by Counsel and was not provided opportunity to provide testimony, proffer evidence of his innocence, or provide Affidavits from witnesses or alibi witnesses. Furthermore, Defendant did not have access to exculpatory evidence, such as videos of his unlawful arrest. Defendant has new information that highlights Constitutional violations and shows that he is not a danger or flight risk.

## II. LEGAL STANDARD & ARGUMENTS

### A) Violations of Defendant's 1st, 4th, 5th, 6th, and 14 Amendments

The government's prosecution of Defendant stems from an UNLAWFUL warrantless arrest at St. Joseph's Catholic Church in Trenton, Michigan by the Trenton Police Department which flagrantly violated Defendant's 1st Amendment, 5th Amendment, and 4th Amendment. Defendant, a Catholic, was partaking in

Christmas Mass and praying for his recently deceased father. As a Catholic, nothing precluded Defendant from attending Mass at St. Joseph's Catholic Church.

The alleged victim was not present at Mass and she did not have a "No Contact Order". In fact, the alleged victim texted Defendant ~10 days prior to Defendant's unlawful arrest, thanking Defendant for sending a gift and requesting that he return personal items.

Despite no arrest warrant or probable cause to make an arrest, Defendant was ambushed by Trenton Police, thrown against a wall and immediately handcuffed at ~11:00am. Defendant's phone and car keys were seized from his pockets. "It does not take formal words to complete an arrest. It simply takes the deprivation of liberty under the law." *US v McCaleb*, 552 F 2d  6th Cir 1977. **[Trenton Police violated MCL 764.15, & Defendant's 4th and 5th Amendments]**

Trenton Police held Defendant in handcuffs for 30+ minutes, refusing to release him. The purpose of the unlawful detention was to interrogate Defendant "in the hope that something might turn up." *Dunaway*, 442 US. During this time, police pressed Defendant for the location of his car with the intent of searching it for investigatory purposes. At 11:04:50am an officer can be heard saying "I'm going to check the car". Police did not observe or arrest Defendant in, at, or near his car which was parked ~150 yards away. Nevertheless, several officers

proceeded to walk to Defendant's car with AV's father and uncle in an attempt to unlawfully search it without a warrant. "The Belton Rule cannot be stretched so as to render it limitless by permitting officers to search any vehicle from which an arrestee has emerged regardless of how much time has elapsed since his exit or how far he is from the vehicle when arrested." *Arizona vs Gant*, 556 US 332 (2009).

At ~11:32am, Trenton Police told Defendant that he was being arrested and then placed him in a patrol car. Defendant can be heard asking police "why am I being arrested?" and the officer refused to provide Defendant with a reason for his arrest. An "arrest cannot be used as a pretext to search for evidence". *US vs Lefkowitz*, 285 US 452. **[Trenton Police violated MCL 746.19]**

Trenton Police proceeded to rummage through backpacks and personal belongings in Defendant's car under the guise of an "inventory search". Lt Grignon can be heard saying "it's all guy's stuff" and became visually frustrated when he could not find incriminating evidence saying  "come on dude." When Lt. Grignon realized that his illegal actions were being recorded, he intentionally turned off his bodycam...The Court should note that no contraband, no weapons, and no illegal items were found inside the car. Nevertheless, police seized "boat ads" found amongst piles of paperwork and "cash" that Defendant and wife had for a vacation,

and scanned it into "evidence" at the police station.  **[Trenton Police violated Defendant's 4th Amendment and violated their own Inventory Search Policy]**

Trenton Police kept Defendant unlawfully jailed for over 96 hours & denied him calls to his wife and his attorney. During Defendant's false imprisonment, Trenton Police cruelly taunted Defendant saying, "your daughter will not remember you" and "never come back to Michigan". Defendant begged Trenton Police to release him so that he could see his family for Christmas and finish planning his dad's funeral. Defendant had a meeting scheduled with a funeral director on Dec 26th 2023, and had an appointment scheduled with his wife at a fertility clinic in early January 2024. Defendant and his wife were trying to conceive another child. **[Trenton Police violated Defendant's 6th and 14th Amendments]**

Instead of releasing Defendant from custody, Detective Mark Driscoll, without probable cause and in BAD FAITH, obtained a "bare-bones" warrant to search a car located in another town for possible evidence of a possible abduction. Driscoll's Affidavit stated mere suspicions without providing factual circumstances regarding veracity, reliability, and basis of knowledge. *United States v Weaver*, 99 F. 3d 1372 (6th Circ 1996. Driscoll failed to corroborate information or provide a link between observed criminal activity and the target location of the warrant. **[Trenton Police violated Defendant's 4th Amendment]**

Upon execution of the warrant on Dec 26th 2023, Driscoll again acted in BAD FAITH by FISHING FOR inflammatory items from a car that Defendant's family had packed in relation to moving their house. Driscoll seized intimate family items, such an ovulation predictor and adult toys, an emergency pouch, survivalist ideas, and a map of Greece. Driscoll ignored items such as children's toys, family heirlooms, bags of clothing, college diplomas, business files, rosary beads, and thousands of pieces of paperwork. "A warrant must describe evidence sought with enough particularity to prevent a general exploratory search." *US v Schultz*, 14 3d 1093 (6th Circ 1994). **[Trenton Police violated Defendant's 4th Amendment]**

On Dec 27th 2023, the AV served as a police proxy texting Defendant's wife "[police] let me know that he had a large amount of cash in his rental car along with other concerning things. Do you know of any other possibly illegal things he may have done or participated in? The police seem really concerned about something he's done. It's very possible that he did something completely in private too but I was wondering if you had any idea what it could be about." It is clear that the AV and Trenton Police were trying to incriminate Defendant for ANY CRIME.

Meanwhile back at the police station, Trenton Police still refused to allow Defendant to call his attorney, refused to take Defendant's statements, failed to consider exculpatory evidence, and did not investigate or corroborate allegations.

"An officer is required to consider both exculpatory and inculpatory evidence before determining if probable cause exits for making an arrest or issuing an arrest warrant." *Gardenhire v Schubert*, 205 F 3d 303.

On December 27th 2023, Detective Driscoll sent a Criminal Complaint for "attempted kidnapping" to the FBI and DoJ. The Complaint contained lies and misrepresentations, and LACKED PROBABLE CAUSE. FBI Agent Paul Staso approved it without any federal investigation.  For example, Agent Paul Staso did not review the bodycam footage of Defendant's unlawful arrest until December 29, 2023- one day after he signed the Affidavit for a Federal Arrest Warrant attesting to "having reviewed such videos". Staso's misrepresentations violated Defendant's due process, mandate a Franks Hearing, and a dismissal of the case. "Leon exception does not apply when the affidavit contains knowing or reckless falsity." *US v Abernathy*, 843 F 3d 243 (6th Circ 2016).

The Court should also be aware that Trenton Detective Mark Driscoll has an alarming history of misconduct in the community.  In 2015 Mark Driscoll killed a young man, Kyle Baker (*Baker v City of Trenton*, ED MI 2018). Kyle's autopsy report contradicted Driscoll's testimony of shooting in  "self-defense". Sadly, Heather Baker is trying to receive justice for her slain son. In a separate incident, Mark Driscoll shot and almost killed Jimmy Leftwich (*Leftwich v Driscoll*, 6th Cir 2023). In that case, Driscoll was found liable by the 6th Circuit Court for using

7

excessive force in violation of 4th Amendment. Given Driscoll's repeated disrespect for the 4th Amendment and flagrant misconduct, the Suppression of Evidence in Defendant's case is OVERWHELMINGLY WARRANTED to deter future Trenton Police misconduct.

B) Violations of the Bail Reform Act

On January 10th 2024, Defendant suffered more violations of his due process under the Bail Reform Act when the US District Court erred by granting the government's motion to hold a Detention Hearing under 3142(f)(1)(A)- "crime of violence". Under the US Bail Reform Act, pre-trial release is MANDATORY for Defendant unless 3142(f) factors apply to the case. *United States v Himler*, 797 F. 2d 156 (3rd Circ, 1986). 3142(f)(1)(A) does not apply to Defendant's case. Therefore, Bail should have been granted for Defendant and a Hearing held only to determine the conditions of his release under 3142(c)(A)(B).

Instead of releasing Defendant, Magistrate Kim Altman erroneously proceeded to consider 3142(g) factors and then granted the government's request for Detention. There is no procedural basis to evaluate 3142(g), unless 3142(f) is fully satisfied under the Bail Reform Act. Judge Parker has already RULED that "crime of violence" [3142(f)(1)(A)] DOES NOT APPLY to Defendant's charged conduct. THEREFORE BY MATTER OF LAW, Defendant must either be released freely or on a set of conditions.

Furthermore, the Bail Reform Act requires, in provision 3142(j), that Defendant must "always be presumed innocent". The Court has referred to items as a "kidnapping kit and plot for AV" which are indicative of "PRESUMED GUILT" which, in itself, is another violation of due process under the Bail Reform Act.

It should be stipulated that there is nothing in the Record that corroborates a "subjective intent" to kidnap or harm the alleged victim, a "kidnapping plot" or a "kidnapping kit". Mere items located 5 miles away from Defendant's location, in a packed family vehicle for moving, are not corroborative of "subjective criminal intent", a "knowledge of items" or a "willingness to use items" in relation to a crime. If this were the legal standard, any Outdoorsman could be recklessly prosecuted for ("attempted kidnapping"/"attempted murder"/"attempted ?") based on false accusations and cherry-picked items MILES AWAY in a car or house!

For this reason, "subjective intent" cannot be inferred from circumstantial evidence in "attempted offenses". It must be unequivocally corroborated, however in Defendant's case IT IS NOT.  "Evidence alone was insufficient to establish intent or a substantial step." *US v Buffington*, 815 F 2d 1292 (9th Circ 1987). Courts require a "heightened corroboration of intent" such as multiple credible informants, recorded statements, and surveillance to ensure intent is both strong and non-fleeting. Defendant's intent was never confirmed. Instead, the government recklessly relied on uncorroborated hearsay from one non-credible person, W1,

who in his Affidavit to Trenton Police on Dec 27th 2023 said that he was merely

afraid Defendant "might possibly injure or kidnap AV". W1 was clearly UNSURE

of Defendant's intent. Magistrate Altman even alluded to this uncertainty during

the Jan 10th 2024 Hearing saying, "Well nobody really knows what's going on".

She's CORRECT. Nobody knows what's going on EXCEPT DEFENDANT

HIMSELF. Defendant DID NOT have the "subjective intent".

C) Violations of Defendant's 5th, 6th, 8th, and 14th Amendments

     The 14th Amendment includes the "right to be free in the enjoyment of all

faculties; to be free to use them in all lawful ways; to live and work where he will;

to earn livelihood; to pursue any livelihood.." *Id*, at 589, 41 L Ed 832, 17 S Ct 427.

The Supreme Court has protected the right to substantive and economic due

process stating, "the right of the individual to contract, to engage in any of the

occupations of life, to acquire useful knowledge, to marry, establish a home and

bring up children, to worship God according to the dictates of his own conscience."

262 US, 399, 67 L Ed 1042, 43 S Ct 625. The Supreme Court also emphasized the

fundamental nature of individual choice about procreation and so foreshadowed

not only the later prominence of procreation as a subject of liberty protection, but

the standard of STRICT SCRUTINY. 316 US 535, 86 L Ed 1655, 62 S Ct 1110

(1942). It is a judicial obligation to scrutinize any impingement on marriage or

procreation with HEIGHTENED CARE. This approach calls for the Court to assess the relative weights or dignities of a person versus the interests of the State.

With that being said, the Court should consider the weights of Defendant's release versus the government's interest in detention. After assessing these weights with prudence, it should be very clear that the FACTS supporting Defendant's release SIGNIFICANTLY OUTWEIGH his continued detention. [Defendant has attached several exhibits in support of these FACTS which he wants UNSEALED and placed on public record]

First, Defendant has been incarcerated for ~20 months. As a "Zero-Point Offender" [USSG 4C1.1], Defendant's sentencing guidelines are 12-18 months for "Stalking" [18 USC 2261(A)] and 50-60 months for "Attempted Kidnapping" [18 USC 1201]. Defendant has EXCEEDED his guidelines for "Stalking", and the "Attempted Kidnapping" charge is absurd. It is common practice that Defendants facing under 120 months incarceration are given Bail. Bail allows a Defendant to maintain all of his liberties, as well as his right under the 6th Amendment to secure effective Counsel. Defendant's prolonged detention has deprived him the right to have an income, and/or secure the funds necessary to hire private Counsel and an effective legal defense team. Defendant's prolonged detention is also unfairly prejudicing his defense, as Defendant cannot access information to impeach government's witnesses or gain access to exculpatory evidence. Defendant also

does not have access to his Discovery, the internet or legal resources. Also, Defendant's communications are monitored by the government which unfairly prejudices his defense strategy, and his mail routinely goes missing or delivered late. This weighs strongly in favor of Defendant's release. [Exhibit A].

Second, Defendant is suffering Cruel and Unusual Punishment in jail. Milan Detention Center is much worse than any Low- Level BoP Prison. Defendant is confined to a small room, and is not separated from CONVICTED CRIMINALS. Defendant is a docile, highly educated, kind-hearted man. He is not dangerous. Defendant has no history of violence or threats of violence to the AV.  Despite this, he is forced to share confines with dangerous individuals, convicted sex offenders, convicted terrorists, and convicted murderers. Defendant has been assaulted, has suffered through gang riots, and has experienced sexual abuse. Despite reporting these issues to staff and the Office of Inspector General, NO MEASURES were taken to protect Defendant from predators. This weighs strongly in favor of Defendant's release. [Exhibit B].

Third, Defendant's prolonged incarceration has become punitive on his family. His wife and daughter are financially and emotionally devastated. Defendant's 4-yr-old daughter is suffering extensive trauma, as a result of Defendant's arbitrary removal from her life. Defendant is a loving father and was involved in every aspect of his daughter's life. Defendant slept next to his daughter

12

at night, took her to soccer practice, played tea-time with her, and read "Love Bug" to her before bedtime. Defendant is heartbroken and missing his daughter beyond comprehension. Defendant would NEVER ABANDON HIS FAMILY. Prior to Defendant's unlawful arrest, Defendant and wife were trying to conceive another child. The Court should not deprive a husband and wife the liberty to maintain their marriage or bring new life into this world.  The Constitution's vicinage clause prevents a Defendant from being dragged to a trial in some distant State. The fact that Defendant is being held far away from his family violates the vicinage clause and is strictly punitive. *United States v Cores*, 356 U.S. 405, 407, 78 S Ct. 875. 2L Ed. 2d 873 (1958). This weighs strongly in favor of Defendant's release.

Fourth, Defendant is suffering significant health issues and is being refused medical care. Defendant is suffering from acute asthma which has worsened due to conditions in jail including asbestos, mold and pepper spray. Defendant suffers from ongoing skin infections and sores which will not heal due to lack of care and unsanitary conditions. Defendant is experiencing cardiovascular, gastrointestinal, and neurological problems, but is not allowed to see a specialist or receive a MRI. If prison delayed or withheld adequate medical treatment due to deliberate indifference, the prison will be liable for damages. *Estelle v Gamble* 429 US at 109. This weighs strongly in favor of Defendant's release. [Exhibit C].

Fifth, Defendant is being deprived a Catholic Priest, Mass, and Holy Communion. The BoP provides weekly religious services for Muslims, but refuses to provide Defendant Catholic services. If members of one faith can practice their religious beliefs, possess religious materials, and get visits from their religious leaders, equivalent opportunity must be available to members of another faith. *Cooper v Pate,* 382 F2d 518 (7th Circuit 1976). Defendant was unlawfully arrested for partaking in Catholic Mass at St. Joseph's Church, and is still being discriminated for his Catholic beliefs. This weighs strongly in favor of Defendant's release. [Exhibit D].

D)  Frivolous, Vexatious, and Bad Faith Prosecution

Defendant's prosecution is predicated on egregious Constitutional violations, Trenton Police misconduct, and the weaponization of ambiguous federal statutes in an unfair manner.

Concerning the weaponization of ambiguous statutes, caselaw from the 6th Circuit mandates that prosecutors follow strict guidelines when charging Defendant's in all "attempted cases" which require, first, unequivocal corroboration of Defendant's "subjective intent" to commit the specific crime and, second, observation of "overt criminal acts" that objectively mark Defendant's conduct as criminal in nature. *US v Ferguson* (6th Cir 2023)

14

The Supreme Court's opinion is also congruent with that of the 6th Circuit ruling that Judges have a responsibility to use existing caselaw and legal precedent to reign-in federal agencies from overzealous interpretations of ambiguous statutes. *Loper Bright Enterprises v Raimondo*, 2024.

District Courts must also enforce the "Rule of Lenity" in Defendant's favor when ambiguity presents itself. The Rule requires the interpretation of ambiguous penal laws in favor of LIBERTY, not punishment. *Wiltberger*, 18 US 76, 5 Wheat at 95. Not only does the Rule of Lenity apply to the federal "kidnapping" and "stalking" statutes, its application also extends to the Bail Reform Act which mandates that the Court rule in FAVOR OF DEFENDANT when AMBIGUITY presents itself.

US Attorney General, Ms. Pam Bondi, has also mandated the importance of exercising prosecutorial discretion, sending a memo on February 5, 2025 to all DoJ employees stating the following:

> Prosecutors are tasked with enforcing the law in a fair and consistent fashion. These tasks require the exercise of prosecutorial discretion. Prosecutorial discretion is bound by the CONSTITUTION, statutes, CASE LAW, and ethical requirements...Prosecutors must consider whether there is probable cause to believe that a federal crime has been committed within their jurisdiction...there is no place for ANIMOSITY or careerism. These types of considerations previously led to the improper weaponization of the criminal justice system.

The government's position against Defendant appears to be fueled by ANIMOSITY and serving "special interests" within the Eastern District of Michigan. Supporting this conclusion is THE FACT that the alleged victim's family has ties to federal agents within this District, and possibly influenced the decision to arrest, charge, and prosecute Defendant.

Naturally these types of relationships, alone, would raise concerns, however combined with the totality of bizarre circumstances in Defendant's case: the hearsay, the unlawful arrest and searches, the lack of investigation, the failure to consider exculpatory evidence, and the ARBITRARY federal arrest warrant, the Court should be DEEPLY TROUBLED about impropriety or at least the "appearance of impropriety". Therefore, Defendant respectfully asks the Court to UNSEAL the identity of the AV, and consider taking measures to mitigate the "appearance of impropriety" including dismissing federal proceedings, transferring venue to New Jersey, or inviting an Amicus Curiae to bring oral argument.

After thoroughly reviewing Rule 16 Discovery, Defendant's prior attorneys believe that the government's position is NOT SUBSTANTIALLY JUSTIFIED. It appears that "Having Lied to a Woman" has become the mantra to "manufacture an attempted crime" in order destroy the Defendant, his wife, and young daughter. This type of weaponization of a Federal Court over a "domestic matter" is truly unprecedented. Courts have abstained from controversies that regardless of how

the government characterizes it "begin and end in a domestic dispute". *Tait v*

*Powell*, 241, ED NY 2017) Federal Courts are of limited jurisdiction, not forums to

waste taxpayer money on shaming men. The "Domestic Relations Exception" bars

such federal overreach.

E) Insufficient facts for continued detention

What's truly telling of the government's Bad Faith position is their zealous

advocacy for Defendant's pre-trial detention versus in other cases involving alleged

"crimes of violence". For instance, in Ms. Ho's prosecution of Mr. Bayandre

Buford for robbery, she did not move for a detention hearing even though Mr.

Buford had an extensive criminal history. *US v Bayandre Buford*, ED MI 2023. It

appears that Ms. Ho is using detention of Defendant solely as a PUNITIVE

bargaining chip.

Furthermore, this Court has routinely granted bail to violent persons, such as

Mr. Donnell Sims and Mr. Norman Calhoun. *US v Calhoun*, ED MI 2023; *US v*

*Sims*, ED MI 2024. Mr. Calhoun shot up his estranged wife's car and had an

extensive history of domestic violence. The 6th Circuit granted Bail for Taylor

Karas, a woman, who in 2017 was charged and later convicted of armed

kidnapping and received a 42 MONTH SENTENCE. *US v Taylor Karas*, (6th Circ

2017).

Courts routinely revoke detention orders to prevent prolonged pre-trial incarceration. For instance, Kalani Uehara was originally denied Bail by the Court, but was eventually released to a Half-Way House so that he could "freely access computers and smart phones" in preparation for trial. *US v Kalani Uehara*, 2023.

### a. Flight-risk

Pre-trial Services confirmed that Defendant is "NOT A FLIGHT RISK".

If the government was actually serious about weighing credible evidence of "flight risk", it would weigh RATIONAL evidence, such as Defendant's work calendars with future meeting dates, future plans for his dad's funeral, future plans for his daughter's baptism, future business obligations, future plans for moving house, future plans for a baby, and Affidavits from his friends and family.

Instead, the government has taken one page of out-of-context ideas and concocted an ABSURD narrative that is entirely uncorroborated. Where is Defendant's massive YACHT? SCUBA gear? Medicine Supply? Food Supply?..Where is Defendant headed to- Morocco? Cuba? Mars? Taco Bell? Elsewhere? Perhaps his dad's funeral?!?..More importantly, how is any of this related to kidnapping the AV??

The government's theory is based on LEGAL FICTION AND THE IMAGINARIUM- imagining what a man COULD DO or WHERE HE MIGHT GO is not a legal basis to deprive him liberty.  Attempting to criminalize man's

creativity, curiosity, wit, humor, eccentricity, masculinity and fantasy undermines the foundation of humanity.

Lastly, Defendant's prior travel overseas should not be a predicate to deny him Bail. Otherwise, the US State Department needs to issue a disclaimer to all US Citizens that vacations may adversely impact one's due process in criminal proceedings.

### b. Dangerousness

The Defendant committed ZERO acts of violence and uttered ZERO threats, yet he remains jailed.

According to AV's Affidavit to Trenton Police in December 2023, Defendant "never abused or threatened" her.

Perhaps most telling of Defendant's innocence is the location of his arrest: CATHOLIC MASS. Defendant was arrested after peacefully greeting people in Church with "Peace Be With You", praying the Our Father, and receiving the Body of Christ on Christmas morning. The government literally invaded GOD'S SOVEREIGNTY and has thrown Defendant into the SANHEDRIN.

Defendant treated the AV, her family, and her friends with kindness. He apologized for his transgressions saying, "I'm sorry. I don't want animosity from you or your family. I'm praying that you can forgive me." Defendant tried to reconcile with the AV, mitigate fallout, and safeguard his family from hostility. He

proactively sought guidance from licensed professionals. His actions pointed towards prudence not dangerousness. For instance, writing an apology letter to make a heartbroken woman "feel special" is not indicative of "mal-intent". In fact, all of the "mal-intent" was harbored by AV and her family. AV's father wanted to kill Defendant, and AV texted Defendant "I have nothing but hate and anger for you". Defendant replied, "you're scaring me".

The government fabricated "dangerousness" in its prior Bail Motion to unfairly prejudice Defendant. For example, Defendant's family was moving and searched "body bags" as a recommended cheap storage option. His family also searched for "hockey bags" and "boxes". The broad searches for criminal penalties in Europe have no nexus to AV, but were included by the government to unfairly prejudice Defendant.

### c. Defendant's Characteristics & Circumstances

Defendant is an active, benevolent contributor to society. Defendant spent a decade leading innovation at various Fortune 1000 companies. He served in an advisory capacity to PCAST, supported the Congressional Committee on Science, Space, and Technology, and advanced strategic federal partnerships in nanotechnology and hypersonics.

At the time of Defendant's unlawful arrest in December of 2023, he was reporting to the CIO of Ingredion Corp, a Fortune 1000 company. Defendant was leading a $250 million proposal to supply healthier food ingredients and donations to end US hunger and build healthier communities. He had also been assisting in the distribution of a fortified porridge to malnourished school children in Africa. He partnered with the White House and CDC Foundation.

Aside from his busy home life and day job leading innovation, Defendant had exciting entrepreneurial plans. In his spare time, he had been building a NIL sports brokerage site with developers and had been soliciting growth capital for its expansion. Defendant was planning to "Go-Live" with the website in January 2024 right after the holidays. Defendant had also invested marketing resources into his real estate business by placing targeted ads in various Canadian magazines. Defendant met with one of these Canadian magazines days before his unlawful arrest. He also met with a commercial real-estate expert to discuss loans for a REIT. Clearly, Defendant's business aspirations were not complete. His efforts, text messages, and communications demonstrate that he was actively engaged in business, work, and family matters- NOT KIDNAPPING THE AV.

Defendant is a loving family man. In November and December 2023 Defendant, his wife, his daughter, and mother were moving out of their family home. They were hosting estate sales, moving carloads of items into storage units,

caring for Defendant's sick father, running errands around town, and working busy jobs. For Christmas 2023, Defendant and his wife planned a vacation to Canada with his in-laws. Despite the chaos that consumed their lives, they looked forward to a relaxing trip. During their trip, Defendant's father passed away and Defendant began making funeral arrangements and writing his dad's Eulogy. He spent several days grieving and getting his father's affairs in order. On Christmas Eve 12/24/23, Defendant's phone records show that he was searching for Mass times at Catholic Churches and selecting Greek Music to play at his dad's funeral. In the hours before his arrest, he was communicating with friends and family members regarding the funeral- NOT KIDNAPPING THE AV.

As an American, Defendant and his family have free reign to move across our Nation as they wish. Nothing precluded Defendant from being in Michigan. Nothing precluded Defendant from attending Catholic Mass at St. Joseph's Catholic Church. Defendant was not in the commission of a crime.

Since his unlawful arrest, Defendant, his wife, and daughter have been traumatized and are living a nightmare. Defendant missed his dad's funeral, lost his home, lost his job, and has been deprived his wife and daugther for ~20 months. Defendant's 4-yr-old daughter is haunted that her father was TAKEN FROM HER ON CHRISTMAS. She now breaks Christmas ornaments and snow globes in anger. She cries for Defendant every night wanting to know why he is gone, and

why he won't come home. Defendant would NEVER ABANDON HIS DAUGHTER and is INCONSOLABLE with grief. Defendant is doing everything in his capacity to return home to his family.

    d. Uncorroborated Hearsay

    The government recklessly used uncorroborated hearsay from W1, Brian Virgili, a mentally unstable alcoholic living in California. W1 suffers from an extensive history of substance abuse, delusions, and unemployment. [Exhibit Z – filed under seal pursuant to Protective Order]. Defendant has not seen this person in over a decade, and he was NOT A WITNESS TO ANY CRIME. The government has also not produced any corroborating information such as his alleged "Mexico Kidnapping Podcast".

    The Court should know that W1 became infatuated with the AV, asking Defendant for nude pictures and trying to meet up with her. Defendant and W1 had a major "Falling Out" prior to 12/24/23. The government is in possession of impeachable evidence, but is preventing Defendant from accessing it via a Protective Order. Defendant wants full access to this evidence, and requests that the records be UNSEALED for the public.

    Lastly, in the interest of justice, Defendant respectfully requests that the Court hold a Competency Hearing to evaluate W1's credibility as a witness. That Motion will be forthcoming.

## III. REQUEST FOR IMMEDIATE RELIEF

WHEREFORE, for the above reasons and in lieu of filing a Habeas 2241 or Motion with Circuit Justice, the Honorable Brett Kavanaugh, Defendant respectfully requests that this Court grant him temporary release for "compelling circumstances".

Defendant's release will mitigate ongoing damages that he and his family are suffering from, allow Defendant to seek medical care and Catholic Mass, and aid in the preparation of his legal defense. It will also allow Defendant to demonstrate to the Court that he is a trustworthy individual and law abiding citizen.

As outlined in this Motion, Defendant's release is MANDATED BY LAW, and is also supported by extremely COMPELLING FACTS which warrant extraordinary relief.

For the Court's convenience, Defendant has attached an ORDER with a proposed set of conditions which Defendant agrees to abide by. Defendant is agreeable to any additional conditions that the Court or Pre-Trial Services may wish to impose on him.

Sincerely,

/s/George Mandarakas

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on 08/25/2025, I electronically filed the foregoing

document with the Clerk of the Court using the ECF system, which will send

notification of such filing to the following: attorneys of record.

Further, I hereby certify that on 08/26/2025, a copy of:

1.  This document

was personally served to the following:

George Mandarakas #93258-510
FCI Milan
Federal Correctional Institution
P.O. Box 1000
Milan, MI 48160

Respectfully submitted,

By:   /s/ Ryan Hugh Machasic
RYAN HUGH MACHASIC
Standby Counsel for Defendant
1221 Bowers St., #910
Birmingham, MI 48012
586.914.6140
ryan@machasiclaw.com