UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                    Plaintiff,              Case No. 24-20024

vs.                                         Hon. Linda V. Parker

GEORGE MANDARAKAS,

                    Defendant.
_____

## <u>MOTION TO SUPPRESS</u>

Pursuant to LR 7.1, concurrence from the
Government was sought and was denied.

## I. STATEMENT OF FACTS

1. On December 25, 2023, Defendant was unlawfully arrested by Trenton Police for allegedly "stalking AV-1" while at St. Joseph's Catholic Church in Trenton, Michigan when in factDefendant was partaking in Catholic Mass at the Church. The AV-1 was not present at Church. (ECF 84)

2. After Defendant's unlawful arrest, Trenton Police conducted an illegal warrantless investigatory search of Defendant's vehicle which had been legally parked on a residential street just two blocks from the Trenton Police Station.

3. During the warrantless search of Defendant's vehicle, police rummaged through Defendant's personal effects ultimately seizing laptops, cellphones, keys, personal documents, and cash. EXHIBIT A: TRENTON POLICE REPORT (BATES000011).

4. On December 26, 2023, while Defendant was still being held in police custody, Trenton Detective Mark Driscoll prepared an Affidavit for a search warrant to search a Hyundai Elantra located in Woodhaven, Michigan. Driscoll's Affidavit simply listed the items that were seized in Defendant's vehicle the prior day, and stated mere suspicions. No criminal activity was corroborated by police, nor was Defendant observed at the Hyundai Elantra. EXHIBIT B: SEARCH WARRANT AFFIDAVIT FOR HYUNDAI ELANTRA (BATES000028)

6.     On December 26, 2023 Judge Michael McNally, a town justice, of the 33rd District of Michigan arbitrarily rubber-stamped a 'blank check' search warrant, and then went to help Trenton Police collect evidence. EXHIBIT B: SEARCH WARRANT AFFIDAVIT FOR HYUNDAI ELANTRA (BATES000028)

7.

7.     During the execution of the search, Trenton Police Detective Mark Driscoll collected a plethora of items attempting to fabricate a narrative that Defendant tried to kidnap AV-1."

8.  On or around December 27th 2023, FBI Special Agent Paul Staso signed an Affidavit for a Federal Arrest Warrant erroneously charging Defendant with "attempted kidnapping". Agent Staso lied in his Affidavit--attesting to having reviewed evidence which he had not received from Trenton Police until December 29, 2023. EXHIBIT C: FBI AGENT STASO RECEIVES INVESTIGATION VIDEOS (BATES000694). Agent Staso lied, again, stating that he confirmed that Defendant's intent was to kidnap AV-1. EXHIBIT D: FBI AGENT STASO ATTESTATION (BATES000265). Staso's Affidavit was based entirely on uncorroborated hearsay, included a list of items that Trenton Police unlawfully cherry-picked miles away from Defendant, listed no elements of kidnapping, and

lacked probable cause. The Federal Arrest Warrant was designed and executed capriciously to violate Defendant's due process.

9. On December 28, 2023, AUSA Nhan Ho brought a federal criminal complaint for "attempted kidnapping" to Judge David Grand. Defendant was charged with "attempted kidnapping" 18 U.S.C 1201(d) and transferred from the Trenton Police Station to Livingston County Jail on December 29, 2023.

10. On January 11th, 2024, Defendant was indicted for "attempted kidnapping" 18 U.S.C 1201(d) and "stalking" 2261(A). The indictment was predicated on Defendant's unlawful arrest, unlawfully seized evidence from two vehicles, a forged search warrant, lies from FBI Agent Paul Staso, and demonstrably false information from Brian Virgili (W1) who was not a witness to any crime. There is no information corroborating Defendant's intent to kidnap or harm the alleged victim.

11. Defendant has spent nearly two years jailed in federal custody suffering due process violations, civil rights depravities, and grossly ineffective assistance of counsel. (ECF 80)

12. Defendant prays that this Honorable Court has the courage to GRANT his Suppression Motion, and provide  him and his family with immediate relief.

## II. Legal Argument

Judge Michael McNally of the 33rd District in the State of Michigan wholly abandoned his judicial role. The Fourth Amendment requires that warrants be supported by probable cause. To be sufficient, "the affidavit supporting the warrant must establish probable cause to believe that specific evidence would be present at the place to be searched". United States v Laettner, 385 F. 3d 977, 951 (6th Circ 2004). In other words, there must be a "nexus between the place to be searched and the evidence sought." United States v Carpenter, 360 F. 3d 591, 594 (6th Circ 2004) (en banc). "It is not enough for police to suspect that the owner or renter of a property committed a crime". United States v Frazier, 423 F. 3d 526, 532 (6th Circ 2005). "The review of the sufficiency of the evidence supporting probable cause is limited to the information presented in the four corners of the affidavit." United States v Berry, 565 F.3d 332, 338 (6th Circ 2009). In instances where no probable cause existed, the GOVERNMENT BEARS THE HEAVY BURDEN of proving that evidence in violation of Defendant's Fourth Amendment should be admitted at trial.

The Supreme Court has imposed strict rules which mandate that no evidence in violation of the Fourth Amendment shall be admitted at trial when any of the following instances present itself: (1) the warrant's affidavit contains a knowing or reckless falsity; (2) the magistrate wholly abandoned their judicial role; (3) the affidavit is so lacking in probable cause as to render official belief in its existence

entirely unreasonable, or (4) where the officer's reliance on the warrant was neither in good faith nor objectively reasonable. By no means are these four rules from the Supreme Court meant to be exhaustive in nature. Thus, if the Defendant can provide additional evidence showing that police acted in "deliberate, reckless, or grossly negligent" disregard of his Fourth Amendment during their investigation, the Court should evaluate that evidence (in toto), and bar any possible application of the Good Faith exception to the Exclusionary Rule. Finally, imposing the "Rule of Lenity" on all of the circumstances mandates that the Court rule in favor of Defendant's liberty (e.g. Suppression) whenever ambiguity presents itself. Bell v United States, 349 U.S. 81, 83, 99 L. Ed. 905, 75 S. Ct. 620 (1955)

The search and seizure of items in the Hyundai Elantra was an egregious violation of Defendant's Fourth Amendment. All evidence seized from the Hyundai Elantra must be suppressed for the following reasons:

### A. Judge Michael McNally of the 33rd District Court in the State of Michigan wholly abandoned his judicial role

On December 26th, 2023, Judge Michael McNally "rubber-stamped" a search warrant from Trenton Detective Mark Driscoll that was utterly devoid of probable cause, veracity, facts, and, quite frankly, human logic. The warrant authorized the search and seizure of a Hyundai Elantra in Woodhaven MI, and

"possible weapons and items to assist with a possible abduction of the alleged victim".

The Affidavit that accompanied the warrant contained no supporting facts to show that Defendant had committed an abduction, or that evidence of an abduction would be found in a Hyundai Elantra located in Woodhaven, Michigan. The Affidavit failed to even specify the reason for Defendant's arrest on December 25th 2023 at St. Joseph's Catholic Church in Trenton, MI. The Affidavit contained no investigation, no police surveillance, no Credible Informant, and no observations of Defendant at the Hyundai Elantra. The Affidavit simply recited that Defendant "possibly placed a tracking device on the AV's vehicle" and that criminals might "conceal evidence in their vehicles and utilize them in committing crimes". The Affidavit further stated that "the Hyundai is registered to Debra A. Mandarakas at the same residence Mandarakas identified as his residence". The Affidavit contained nothing more than "mere suspicions" and established "no nexus", whatsoever, to the Hyundai Elantra. Authorizing such a "bare-bones" warrant to search the Hyundai Elantra for "possible weapons and items to assist with a possible abduction of the AV" amounted to a total abandonment of judicial neutrality by Judge Michael McNally.

Judge Michael McNally's abandonment of neutrality is further evidenced by his presence on-site during the execution of the search. According to the police

report, the warrant was served on-location on Dec 26, 2023. The search warrant and what followed are clearly "reminiscent of the general warrant or writ of assistance of the 18th Century against which the Fourth Amendment was intended to protect". See Marshall v Barlow's Inc 436 US 307, 311, 56 L Ed 2d 305, 98 S Ct 1816 (1978). The unlawful search conducted on the Hyundai Elantra was analogous to the unlawful search conducted in Lo-Ji Sales, whereby the search began and progressed in open-ended authorization. The objective facts manifested a complete erosion of whatever neutral posture existed. Here, Judge Michael McNally allowed himself to become a member of the search party, which was essentially a police operation, and conducted a generalized search under the authority of an invalid warrant. Judge Michael McNally was not acting as a judicial officer, but as an "adjunct law enforcement officer". Lo-Ji Sales, Inc v New York , 442 U.S. 319, 326-27, 99 S. Ct. 2319, 60 L. Ed. 2d 920 (1979)

Perhaps most indicative of Judge Michael McNally's total abdication of his judicial role is that he FORGED SIGNATURES of a fake state prosecutor on the search warrant bysigning "Michael J. Talbot" and then writing "P#8633



2".

8

[SCREENSHOT THE P#86332 from BATES000028]

Judge Michael McNally of the 33rd District in the State of Michigan wholly abandoned his judicial role. Defendant also believes that Judge Michael McNally possibly forged signatures of State Prosecutor Omar Mohamed Shajrah. In such an instance, the warrant will be deemed void ab initio, as forged, falsified, or unauthorized signatures is illegal and unconstitutional. This raises judicial misconduct and criminal fraud issues.

In summation, Judge Michael McNally totally abandoned his judicial role when he signed a 'bare-bones' warrant, participated as a member of the Trenton Police operation, and possibly forged signatures of State prosecutor Omar Mohamed Shajrah. For these reasons, all of the evidence seized from the Hyundai Elantra MUST BE SUPPRESSED.

B. The Affidavit was so lacking in probable cause as to render official belief in its existence entirely unreasonable

The Affidavit stated the following:

[["1. The affiant is a police officer with Trenton Police Department and has been a law enforcement officer for 19 years. Affiant is currently assigned to the Trenton Police Detective Bureau. Affiant's primary duties consist of conducting

9

criminal investigations. Affiant has investigated numerous criminal cases and knows from training and experience that the suspects frequently conceal evidence in their vehicles and utilize them in committing crimes.

2. On Dec 25th 2023, Trenton Officers responded to the area of Elm and 3rd St. (St. Joseph's Catholic Church) in the city of Trenton for a stalking complaint. The complainant stated that her ex-boyfriend,George Mandarakas, is stalking her and believes he placed a tracking device on her vehicle. AV stated that Mandarakas resides in New Jersey and has had unwanted contact with her since November 2023. AV stated she received a Christmas envelope with only a Trenton Postal Stamp on it and recognized the writing to be that of Mandarakas.

3. AV stated she contacted her father, W2, and uncle, W3, who located a "Tile" tracking device taped to the underside of her rear bumper. On Dec 25th, 2023, W2 and W3 placed the "Tile" into AV's vehicle and parked it near St. Joseph's Catholic Church, and then observed it from a different vehicle. They stated they observed a black KIA Forte bearing FL license plate QNLC80 with Mandrakas driving, pass around AV's car twice. They also state they observed Mandarakas park the KIA approximately a half block from the church and then walk toward the church.

4. Trenton Police Officers arrived at the scene where they observed Mandarakas enter the church from the north doors. Trenton officers stated Mandarakas was in the Church briefly and then exited through the south courtyard door and proceeded to walk southbound in the opposite direction of his vehicle. Trenton Officers detained Mandarakas. Affiant arrived at the scene and was informed that Mandarakas had the keys to the KIA which revealed the vehicle was a Hertz rental.

5. Mandarakas was subsequently arrested, and the KIA was impounde. Subsequently an inventory search was conducted per department policy Affiant and other members of the Trenton police located inside the KIA another tracking device, three cellphones, a large amount of US and Canadian currency, printed maps to different locations in and outside the US, a large amount of clothing, many personal documents containing sensitive information, two different hotel cardboard key holders, keys to another vehicle,and the Hertz Rental receipt. The Hertz receipt showed the vehicle was rented from the Hertz Rental located at 23935 Allen Rd. Woodhaven, MI 48183. Ptl Kristofer Wilson went to the Hertz Rental and located a 2010 Hyundai bearing NJ license plate VVJ20M. An SOS check on the license plate revealed the Hyundai is registered to Debra A. Mandarakas at the same residence Mandarakas identified as his residence."]]

The Affidavit that Trenton Police Detective Mark Driscoll prepared was in "deliberate disregard" for Defendant's Fourth Amendment rights. United States v Kinesin, 710 F 3d 678, 685 (6th Circ 2013). The Affidavit contained no specific facts supporting that illegal activity occurred. The Affidavit contained no information that Defendant had committed a crime or probable cause to believe that incriminating evidence would be found within." Payton v New York, 445 US 587-588, 632 Ed 2d 639, 100 S. Ct. 1371 (1980). The Affidavit contained no details of a police investigation. It simply stated that the alleged victim said that "her ex-boyfriend was stalking her and believes he placed a tracking device on her vehicle". Exhibit B: SEARCH WARRANT AFFIDAVIT FOR HYUNDAI ELANTRA (BATES000028). The Affidavit did not corroborate her stalking allegations, it did not include any evidence of veracity, it did not include independent police surveillance, or include any statements from a Confidential Informant. The Affidavit contained nothing more than mere suspicions of "possible criminal activity" without providing some "underlying factual circumstances regarding veracity, reliability, and basis of knowledge". United States v. Christian, 925 F. 3d 305, 312 (6th Circ 2019)(en banc).

In Mendonsa, the 6th Circuit said that an anonymous tip from an unknown informant was insufficient to support a finding of probable cause for a warrant. United States v Mendonsa, 989 F. 2d 366 (9th Circ 1993). Here, Detective Driscoll

DID NOT EVEN USE AN INFORMANT. Driscoll did not speak with the purported "tipster", Brian Virgili, until December 27, 2023which wasone day AFTER executing the search of the Elantra. The 6th Circuit and Supreme Court precedent clearly establishes that the affiant needs to confirm that the confidential informant has given accurate information in the past to qualify as reliable. United States v. Dudek, 560 F. 2d 1288, 1292 (6th Circ 1977) Florida v J.L, 529 U.S 266, 270, 146 L. Ed. 2d 254, 120 S. Ct. 1375 (2000) Here, Driscoll came nowhere close to meeting that threshold. Driscoll deliberately operated off of NOTHING.

Furthermore, the Affidavit did not establish any nexus to search the Hyundai Elantra. The Affidavit simply stated "the Hyundai Elantra is registered to Debra A. Mandarakas at the same residence Mandarakas identified as his residence." That statement DOES NOT SATISFY the minimally sufficient nexus requirement. United States v Carpenter, 360 F. 3d (6th Circ 2004, en banc). "The Good Faith exception cannot apply where information in an application was stale, entirely uncorroborated, OR failed to provide even a REMOTE LINK BETWEEN CRIMINAL ACTIVITY AND THE TARGET LOCATION." United States v Weaver, 99 F 3d 372, 1378 (6th Circ 1996). No criminal activity was observed at Hyundai Elantra. Also, it should be noted that at no point did Defendant identify his residence to officers, as Driscoll alleged in the Affidavit. When Defendant was arrested at 11:02:54, he was never Mirandized. Exhibit E: SGT STADLER'S

BODY-WORN CAMERA FOOTAGE (TRENT01_LL0001). Therefore, Defendant's statements cannot be used against him for the purpose of securing a search warrant. "In order for the casual chain between the illegal arrest and statements made subsequent thereto, to be broken, Wong Sun requires not merely that the statement meet the Fifth Amendment standard of voluntariness but that it be sufficiently an act of free will to purge the primary taint." Brown v Illinois, 422 U.S. 590, 602, 45 L. Ed. 2d 416, 95 S. Ct. 2254 (1975).

The 6th Circuit believes strongly in the protection of the Fourth Amendment as evidenced in many of its controlling cases such as United States v McPherson, 469 F. 3d 518 (6th Circ 2006). The Affidavit supporting the warrant in McPherson recited only discovery of drugs on defendant. Inferences that drugs would be found inside his home were "not permissible unless independently corroborated". The Court in Brown said that "at a minimum, we have required facts showing that the residence had been used in drug trafficking, such as an informant who observed drug deals or drug paraphernalia in or around the residence." United States v Brown, 828 F. 3d at 383 (6th Circ 2016). "If the Affidavit fails to include facts that directly connect the residence with the suspected drug dealing activity, it cannot be inferred that drugs will be found in defendant's home- even if defendant is a known drug dealer." Peffer v Stephens, 880 F. 3d 256, 263 (6th Circ 2018).

Similarly, in Defendant's case the government cannot rely on "inference" upon "inference" of uncorroborated "possible future criminal activity" to justify probable cause or a nexus. Doing sowould enable law enforcement agencies unbridled access to search ANY PLACE at ANY TIME on just the "mere suspicion" of possible criminal activity. Essentially, police would gain access to a limitless number of locations to "cook up" whatever "future attempted crime" against whomever they wished. That egregious abuse of the Fourth Amendment by law enforcement would make ANY PERSON susceptible to an unlawful search and seizure.

To further illustrate Defendant's argument, Defendant will outline a hypothetical scenario:

Imagine if Hannah was arrested after an altercation with her ex-boyfriend, Patrick, at Miller's Bar in Detroit. After Hannah's arrest, police would not have probable cause to then obtain a warrant to search Hannah's house on the mere suspicion of "possible weapons and items" that could assist with a "possible abduction of Patrick". Hannah was not observed committing any crime at her home, nor was she observed trying to abduct Patrick at Miller's Bar in Detroit. Searching Hannah's home to rummage through her effects in order to manufacture a possible future crime would be a FLAGRANT Fourth Amendment violation. Think about it-,corrupt officers could try turn any minor domestic dispute into

"attempted kidnapping" or "attempted murder" by seizing a rope and knife from your garage.

Similarly, the government's perverted effort to prosecute Mr. Mandarakas for attempted kidnapping is ARBITRARY, MALICIOUS, VEXATIOUS, BAD FAITH, and akin to the movie "Minority Report". The government's actions cannot be tolerated by any Court in this District, Circuit, or Nation because framing innocent Americans for serious "attempted crimes" undermines the integrity of our criminal justice system. This is why the 6th Circuit mandated that INTENT and OVERT ACTS MUST BE UNEQUIVOCALLY CORROBORATED IN ATTEMPTED CRIMES. United States v Ferguson, 65 F 4th 806 (6th Circ 2023) This is also why Ms. Pam Bondi sent a memo on February 5, 2025 to all Department of Justice J prosecutors stating "prosecutors must use discretion when charging...discretion is bound by ETHICS, EXISTING CASELAW, and the CONSTITUTION... to ensure that the law is enforced in a FAIR and CONSISTENT MANNER." That memo must have gone straight to Ms. Nhan Ho's spam folder because nothing is fair or consistent about Mr. Mandarakas' prosecution.

In summation, the Affidavit that Detective Mark Driscoll prepared was deliberately devoid of probable cause and did not establish a minimally sufficient

nexus. Therefore, all of the evidence seized in the Hyundai Elantra must be suppressed due to egregious violations of Defendant's Fourth Amendment.

      <u>C. The officer's reliance on the warrant was neither in good faith, nor objectively reasonable</u>

      The warrant was not objectively reasonable because it violated the privacy of multiple persons not linked to the investigation, failed to specify which items to be seized, and led to the excessive seizure of intimate family items.

      When Detective Mark Driscoll prepared the Affidavit for the search warrant for the Hyundai Elantra on December 26, 2023, he knew that the vehicle was registered to Debra A. Mandarakas. This fact alone should have caused an objectively reasonable officer to "pump the brakes" on preparing the search warrant. The 6th Circuit has stated that warrants referring to "property of a certain type is insufficient if that property is common". United States v Campbeli, 256 F. 3d 381, 388-89 (6th Circ 2001). Trenton Police KNEW that they were dealing with common property.  On December 25, 2023, Trenton Police took photos and a video of the Hyundai Elantra, observing many innocuous family items in plain-view. EXHIBIT H: PHOTO OF ELANTRA (BATES000078); EXHIBIT I: PHOTO OF ELANTRA (BATES000045).



[PASTE SCREENSHOT  124003TRENT16_LL0016 at 12:39:38]

The Elantra was clearly packed to the brim with family items, bins of paperwork, Notre Dame Diplomas, and children's toys. On the front passenger seat was scattered food, and on the floor was a bag overflowing with fast-food trash. EXHIBIT J: PHOTO OF ELANTRA (BATES00046). Clearly, this vehicle did not resemble the archetype "kidnapper van". It appeared to be a car full of disorganized items conducive to moving. A reasonable officer would have investigated this further by consulting with Defendant; speaking with Defendant's wife; speaking with Defendant's mother; or speaking with AV-1 to verify that Defendant's family

18

was in the midst of moving. However, Trenton Police failed to investigate or even consider exculpatory evidence. Instead, Detective Mark Driscoll prepared and executed a search warrant that was NON-PARTICULARIZED and permitted the collection of ANY ITEMS that appeared to be remotely incriminating. The broad language of the warrant was egregiously unconstitutional and violated Defendant's Fourth Amendment.

The Fourth Amendment states "no warrants shall issue, but upon probable cause, supported by Oath, and PARTICULARITY describing the place to be searched and the persons or things to be seized." U.S. Const amend IV. Particularity eliminates the danger of unlimited discretion in the executing officer's determination of what is subject to seizure. United States v Blakeney 942 F. 2d 1001, 1026 (6th Circ 1991). A description of items is "valid if it is as specific as the circumstances and the nature of the activity under investigation permit." United States v Ables, 167 F. 3d at 1033 (6th Circ 1999). "The language of a warrant is to be construed in light of an illustrative list of seizeable items. General descriptions of property are appropriate ONLY IF DESCRIPTIONS OF SPECIFIC TYPES OF PROPERTY HAVE ALREADY BEEN FURNISHED.  The warrant prepared by Trenton Detective Mark Driscoll was not particularized, and did not contain specific descriptions of property to be seized. It merely stated "possible weapons

and possible items". This language was not sufficient for complying with the

particularity requirement of the Fourth Amendment.  A particular warrant "assures

the individual whose property is searched or seized of the lawful authority of the

executing officer and limits his power to search." United States v Chadwick, 433

US 1, 9, 53 L Ed 2d 538, 97 S Ct 2476 (1977). Driscoll's warrant was an invalid

"catch-all" warrant. In Greene, the government conceded that a "catch-all" clause

was overbroad, thereby severing it from the more detailed portion of the warrant

which listed the make, model, and caliber of four firearms. United States v Greene,

250 F. 3d (6th Circ 2001). Here, there is nothing to sever.

Mr. Mandarakas' case is also distinguishable from Blakeney. In Blakeney,

the Court ruled that the search warrant was not overbroad because it gave

"SPECIFIC EXAMPLES" of documents to be seized, such as "bank statements,

money drafts, and letters of credit in a money laundering case." Blakeney, 942 F.

2d at 1027.  Detective Driscoll's warrant did not provide anything close to that

level of detail. For instance, Detective Driscoll did not list in the warrant "rope,

knife, flashlight" Driscoll simply listed "possible weapons and items". EXHIBIT

B: SEARCH WARRANT ELANTRA (BATES000028). Such a vague warrant is

unlawful because DRISCOLL PROVIDED HIMSELF UNBRIDLED ACCESS to

rummage through the personal effects of the Mandarakas family. Courts require

"additional details to distinguish between contraband and legally possessed

20

property". Wheeler v City of Lansing, 660 F. 3d 931, 941 (6th Circ 2011).Here, Driscoll did not distinguish AT ALL. And Detective Driscoll not only drafted the defunct warrant, he led the search party on a quest to pillage the Hyundai Elantra.

Upon executing the warrant, Detective Mark Driscoll acted with deliberate intent by violating Defendant's Fourth Amendment, Debra Mandarakas' Fourth Amendment, Stephanie Mandarakas' Fourth Amendment, Steve Mandarakas' Fourth Amendment, and Kingsley Mandarakas' Fourth Amendment. Detective Driscoll seized items such as an ovulation predictor that Defendant and his wife were using for family planning purposes, intimate adult toys, an iPhone, miscellaneous keys, a storage pouch, and 700 rounds of ammunition(without a firearm). There was no method to Detective Driscoll's madness. Driscoll was clearly on a mission to seize ANYTHING THAT WAS REMOTELY INFLAMMATORY to manufacture a crime. Most of the items that Detective Driscoll seized were not even in plain-view or easily accessible. For instance, Driscoll rummaged through sealed bags and packages, allegedly seizing a pocket knife and headlamp from inside an envelope found within another duffle bag. Not only were these unlawfully seized items NOT CONTRABAND OR USED IN A CRIME, these items were also found in a SHARED FAMILY VEHICLE. "Without improperly stacking inferences, no juror could infer that defendant possessed child

porn which was found on a laptop in a family home shared by three persons".
United States v Lowe, 795 F 3d. 519 (6th Circ 2015).

Additionally, Detective Mark Driscoll left many of the unlawfully seized items off of the Warrant Tabulation Return in an attempt to conceal his misconduct and flagrant Constitutional violations. EXHIBIT K: WARRANT TABULATION & RETURN (BATES000032). For instance, Driscoll unlawfully seized cologne, USB drives, cash, sunglasses, blue-tooth ear buds, a cigar cutter, a map of Greece, sweaters, socks, charging cords, notebooks, and hundreds of legal documents pertaining to Defendant's father. These items were not listed on the Warrant's Tabulation Return, however are being stored by the FBI as "Evidentiary Exhibits". On August 12, 2025 Defendant viewed these "Exhibits" alongside Mr. Ryan Machasic, Ms. Nhan Ho, and FBI Special Special Agent Paul Staso.

Trenton Police also failed to preserve useful and exculpatory evidence including the Hyundai Elantra, children's toys, family heirlooms, calendars, bins of paperwork, clothing, and diplomas. Trenton Police's failure to preserve these items is a BRADY VIOLATION which should be remedied by the suppression of all evidence. Brady v Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963) requires the preservation of evidence in police custody. United States v Deaner, 1 F. 3d 192, 199 (3rd Circ 1993).

Even more telling of Detective Driscoll's disingenuousness is that he could have easily tailored the search warrant to be more particularized in nature, but failed to do so. On December 25th 2023, Lt Grignon scanned notes into evidence of the "purported kidnapping plot". EXHIBIT L: PURPORTED PLOT PHOTO (BATES000049); EXHIBIT M: PURPORTED PLOT PHOTO (BATES000050). This purported "kidnapping plot" had "no date", made no mention of "weapons", made no mention of "AV-1", made no mention of an "abduction", and made no mention of any "restraints". The purported plot did, however, CONTAIN A LIST OF VERY SPECIFIC ITEMS WHICH INCLUDED:

"printed photos of family"

"printed phonebook of numbers"

"food supply"

"water supply"

"medicine supply"

"reverse umbrella"

"life vests"

"life boat"

"satellite phone"

"SCUBA gear"

"fishing nets"

And on the reserve side of this "purported plot" (which the government has obfuscated from the public purview) read the following:


"SCOTCH"

"2246 Jersey Ave"

"SCOTCH BIG"

and other barely legible phrases including,

"are there screws"

"glue by seam"


.................[CRICKETS]..........................


To an untrained eye, this tiny scrap paper would appear to be trash, but not for Mark Driscoll of the Trenton Police Detective Bureau.  Driscoll was so firm in his belief that this was a "kidnapping plot" that he apparently abandoned any

24

attempt to prepare a particularized search warrant for THOSE VERY SPECIFIC ITEMS that were listed on the "plot". Driscoll's total abandonment of any attempt to be particularized on the warrant shows that he was not motivated in Good Faith, but instead wanted to deliberately violate Defendant's Fourth Amendment by fishing for ANY possible criminal evidence in the Hyundai Elantra. Driscoll's goal was simple: to manufacture a crime to keep Defendant jailed. This was evident when Driscoll told Defendant that "YOUR DAUGHTER WILL NOT REMEMBER YOU". Driscoll was driven by animosity and by members of the AV's scorned family who assisted Trenton Police with the investigation.

On December 27, 2023, the AV acted as a police proxy texting Defendant's wife "police let me know that he had a large amount of cash along with other concerning things. Do you know of any other possibly illegal things he may have done or participated in? The police seem really concerned about something he's done. It's very possible that he did something completely in private too but I was wondering if you had any idea what it could be about".

While Trenton Police openly communicated sensitive investigatory information to AV's family, officers continued to shun Defendant. Officers refused to allow Defendant to call his attorney, refused to take Defendant's statements, failed to contact Defendant's family members, refused to consider exculpatory evidence, and did not corroborate any allegations.

In summation, the Fourth Amendment "requires that a warrant describe with particularity the items to be seized, so as to prevent the use of general warrants authorizing wide-ranging rummaging searches that violate the prohibition against unreasonable searches and seizures." United States v Hanna, 661 F. 3d 271, 286 (6th Circ 2011). Trenton Police deliberately violated Defendant's Fourth Amendment with the non-particularized search of the Hyundai Elantra. Their egregious conduct has subjected Defendant to an ARBITRARY federal prosecution and has violated the Mandarakas family's Constitutional Right to privacy.

<u>D.  The warrant's affidavit contained a knowing or reckless falsity</u>

The Affidavit stated that "the Hyundai Elantra is registered to Debra A. Mandarakas at the same residence Mandarakas identified as his residence". EXHIBIT B: SEARCH WARRANT AFFIDAVIT HYUNDAI ELANTRA (BATES000028). Defendant never identified his residence to be the same residence as Debra A. Mandarakas. Trenton Police included this KNOWING FALSITY in an effort to try to establish a 'minimally sufficient nexus'. The warrant would not have been issued had this statement been removed. "Leon exception does not apply when the affidavit contains knowing or reckless falsity." United States v Abernathy, 843 F 3d 234 (6th Circ 2016).

Furthermore, the Affidavit contained evidence that was obtained through an illegal search and seizure of Defendant's vehicle. The Affidavit stated "Affiant and other members of the Trenton Police located inside the KIA, another tracking device, three cell phones, a large amount of US and Canadian currency, printed maps to different locations in and outside the US, a large amount of clothing, many personal documents containing personal information, two different hotel cardboard key holders, keys to another vehicle and the Hertz rental receipt."  This evidence is considered 'fruit of the poisonous tree' and including it on the Affidavit by Trenton Police was a KNOWING FALSITY.

Finally, the Affidavit contained grossly misleading details regarding Mr. Mandarakas' unlawful arrest. For instance, the Affidavit left out information that Mr. Mandarakas had been peacefully partaking in Catholic Mass prior to being ambushed and arrested by police. Instead, the Affidavit tried to infer that Mr. Mandarakas had abruptly arrived at Church to find the AV-1. The information provided by Detective Driscoll was intentionally misleading.

### E. The conduct by officers (considered in toto) showed deliberate, reckless, and negligent disregard for Defendant's Constitutional Rights

There is an overwhelming amount of evidence which details how Trenton Police were operating in Bad Faith from the onset of this investigation. Most

notably, Defendant's unlawful arrest at Catholic Mass at 11:02:54 (EXHIBIT E:
SGT STADLER'S BODY-WORN CAMERA FOOTAGE,
110306TRENT01_LL0001), the unlawful warrantless search of Defendant's
vehicle at 11:35:27 (SGT P: SGT STADLER'S BODY-WORN CAMERA
FOOTAGE, 113532TRENT01_LL0001), the failure to promptly inform Defendant
why he was being arrested at 11:31:24 (EXHIBIT O: PTL BEDSUN'S BODY-
WORN CAMERA FOOTAGE, 110341TRENT13_LL0013), the falsification of a
misdemeanor assault charge (EXHIBIT N: MANDARAKAS' BOOKING
CHARGE, BATES000051), the cruel comments made to Defendant including
"YOUR DAUGHTER WILL NOT REMEMBER YOU" and "NEVER COME
BACK TO MICHIGAN", the refusal to allow Defendant to call his attorney, the
failure to corroborate allegations, the refusal to consider exculpatory evidence, and
the disclosure of information to AV-1's family during this investigation.

Defendant has also uncovered evidence which suggests that possible FOUL
PLAY and EVIDENCE TAMPERING has occurred, however he will abstain from
placing those details on the Record at the moment.

### III. CLOSING

Considering all of the FACTS that were detailed above, including forged
signatures on the search warrant, the 'bare-bones' Affidavit, the non-particularized

scope of the search, and the falsities listed in the Affidavit, it is IMPOSSIBLE FOR THE GOVERNMENT TO SAVE THE FRADULANT SEARCH WARRANT for the Hyundai Elantra.

WHEREFORE, Defendant respectfully asks that this Honorable Court GRANT his Motion to SUPPRESS ALL ITEMS FOUND IN THE HYUNDAI ELANTRA, and GRANT him immediate relief by DISMISSING THE INDICTMENT WITH PREJUDICE. The Supreme Court recommends the dismissal of an indictment when the actions of law enforcement officers or informants is "so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction".  United States v Russell , 411 U.S. 423, 36L. Ed 2d 366, 93 S. Ct. 1637 (1973). Here, the conduct of Trenton Police officers was extremely outrageous throughout all facets of this investigation. Trenton Police repeatedly violated Defendant's Constitutional Rights, forged documents, and cherry-picked items to fabricate a HYPOTHETICAL CRIME against a HYPOTHETICAL VICTIM. The government's alleged crime has zero basis in reality or plausibility.

Respectfully,

/s/George Mandarakas

Defendant-in Pro Per

FCI Milan
Federal Correctional Institution
Pox 1000
Milan, MI 48160

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on 11/11/2025, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing to the following: attorneys of record.

Further, I hereby certify that on the same date, a copy of:

1. This document was personally delivered to the following:

George Mandarakas #93258-510
FCI Milan
Federal Correctional Institution
P.O. Box 1000
Milan, MI 48160

Respectfully submitted,

By:   /s/ Ryan Hugh Machasic
RYAN HUGH MACHASIC
Standby Counsel for Defendant
1221 Bowers St., #910
Birmingham, MI 48012
586.914.6140
ryan@machasiclaw.com